## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| SYLVESTER TAYLOR, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | No.  06-CV-3016 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Before this Court is a motion to vacate, set aside, or correct a sentence filed by Petitioner-Defendant Sylvester Taylor ("Defendant") pursuant to 28 U.S.C. §2255.  For the reasons set forth below, this motion is DENIED and this case is DISMISSED with prejudice.

### BACKGROUND

On July 12, 2002, Defendant was indicted for conspiracy to distribute over 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1).  At a hearing held February 21, 2003, Defendant plead guilty before Judge John M. Waters in the Central District of Illinois in conjunction with a written plea agreement.  In that agreement, Defendant waived his right to directly appeal or collaterally attack the proceedings with respect to the plea agreement, the waiver it contained, the conviction, or the ultimate sentencing determination.  The agreement contained the following language:

### WAIVER OF RIGHT TO COLLATERAL ATTACK

21.  The defendant also understands that he has a right to attack his sentence collaterally on the grounds it was imposed in violation of the Constitution or laws of the United States, he received ineffective assistance from his attorney,

this Court was without proper jurisdiction or the sentence was otherwise subject to collateral attack.  The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255.  The defendant and his attorney have reviewed Section 2255, and the defendant understands the rights that statute gives him.  The defendant's attorney has fully discussed and explained this waiver with the defendant but has made no recommendation to the defendant as to the waiver of a motion under Title 28, United States Code, Section 2255.  Regardless of any advice his attorney has given him one way or the other, in exchange for the concessions made by the United States in this Plea Agreement, specifically including the opportunity to cooperate with the United States and possibly provide sufficient substantial assistance to induce a motion for a downward departure as set forth above, the defendant hereby knowingly and voluntarily waives his right to challenge any and all issues relating to his plea agreement, conviction and sentence, including any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States code, Section 2255.  The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal or collaterally attack any issues relating to his conviction and to his sentence so long as the sentence is within the maximum provided in the statutes of conviction.

Plea ¶ 21.  In order to ensure that this plea agreement was knowingly and willingly entered into, the trial judge engaged in a colloquy regarding the major issues it contained.  *See generally* Plea Hrg. Tr.  In light of Defendant's responses in open court, the judge found that the plea agreement had been entered into knowingly and willingly, and that defense counsel had been satisfactory. *Id.*  At no point did Defendant question the validity of the plea process generally or indicate a serious lack of understanding its consequences.  On August 21, 2003 Defendant was sentenced by the trial court according to the Federal Sentencing Guidelines ("Guidelines") to 151 months imprisonment.  Defendant did not directly appeal his sentence, though he claims that he requested and was promised that his attorney would do so.  2255 Mot. at 5.

On September 5, 2003, Defendant filed a pro se motion, challenging his incarceration on a variety of grounds and requesting that his sentence be vacated, set aside, or corrected pursuant

to 28 U.S.C. §§ 2255.  *See generally* 2255 Mot.  In that filing, Defendant argues that: (1) his counsel was ineffective at the plea stage for failing to discuss the agreement with him, as well as deceiving and coercing him, resulting in a plea that was neither knowing nor voluntary; (2) his counsel was ineffective for arguing against an allocution at sentencing, generally acting in a coercive and/or deceitful manner, and failing to file a requested Notice of Appeal; and (3) his sentence violated his Sixth Amendment rights under *Blakely v. Washington*, 124 S.Ct. 2351 (2004).  *Id.*

## LEGAL STANDARDS

Federal courts may grant a motion attacking a sentence in a federal court by establishing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255; *see also Arango-Alvarez v. United States*, 134 F.3d 888, 890 (7th Cir. 1998) (applying Section 2255).  If the reviewing court determines that such a defect exists in the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  *Id.* Relief under Section 2255 "is reserved for extraordinary situations."  *Sims v. United States*, 71 F. Supp. 2d 874, 876 (N.D. Ill. 1999) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)).

To prevail on the merits, a habeas corpus petitioner must show that their conviction or their sentence is based on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice."  *Oliver v. United States*,

961 F.2d 1339, 1341 (7th Cir. 1995) (internal quotations and citations omitted).  After reviewing the Defendant's motion, the government's response, and any record of prior court proceedings, the court will determine whether an evidentiary hearing is required.  *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings.  "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the [court] shall make an order of summary dismissal."  *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings; *see also Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990).

Typically, claims not brought on direct appeal cannot be raised for the first time pursuant to an action under § 2255.  However, this Court notes that failure to raise ineffective assistance of counsel claims during the direct appeal is not necessarily dispositive – particularly where the very failure to appeal and the waiver of the appeals right was a central element in the ineffective assistance of counsel claim.  In *Massaro v. U.S.*, the Supreme Court created an exception to the general rule that claims not raised on direct appeal may not be raised on collateral review absent a showing of cause and prejudice.  538 U.S. 500 (2003).  The *Massaro* Court held that ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."  *Id.*

The right of a criminal defendant to file a §2255 motion can be validly limited or altogether precluded by a waiver attached to a plea agreement.  However, the Seventh Circuit has noted that such a waiver is only enforceable when it "is knowing and voluntary and...the defendant cannot establish a claim of ineffective assistance of counsel in connection with negotiating the agreement." *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000)

(quoting *Jones v. United States*, 167 F.3d 1142 (7th Cir. 1999)).  Defendant's goal in this case is to challenge the validity of his guilty plea, and thus undermine the waiver that it incorporated. However, the scope of possible argument on this issue has been limited by the Supreme Court, which stated that the only means of challenging a plea entered with the advice of counsel is via allegations of ineffectiveness.  *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) ("a defendant who pleads guilty with the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that [counsel was ineffective]'") (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Ineffective assistance of counsel is a constitutional error that can provide grounds for granting a § 2255 motion.  In order to sustain a Sixth Amendment ineffectiveness claim, Defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's deficient performance, there is a reasonable likelihood that the outcome would have been different.  *Valenzuela v. United States,* 261 F.3d 694, 698 (2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To meet the first prong of the *Strickland* test, a petitioner must show that counsel's performance at trial fell beneath the "objective standard of reasonableness" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 688.  In alleging deficient performance, a petitioner is required to "identify the acts or omissions of counsel that are unreasonable."  *United States v. Hodges*, 259 F.3d 655, 658 (7th Cir. 2001) (internal quotations and citation omitted).  Moreover, "[a] party must present evidence, not mere conclusory allegations" to support a claim that counsel's performance was deficient in a certain respect.  *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991) (citations omitted).  *See also Enoch v. Gramley*, 70 F.3d 1490, 1498-99 (7th

-5-

Cir. 1995) (where the petitioner "makes conclusory or speculative allegations rather than specific factual allegations" in support of ineffectiveness claim, he is not entitled to an evidentiary hearing, and his claim fails).

To meet the second prong of the test, a petitioner must demonstrate to a reasonable probability that, but for her counsel's performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id. See also Washington v. Smith*, 219 F.3d 620, 632-33 (7th Cir. 2000). "In requiring the defendant to show prejudice to the outcome of the trial, the Supreme Court noted that 'the purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.'" *United States v. Hernandez-Rivas*, 348 F.3d 595, 600-01 (7th Cir. 2003) (quoting *Strickland*, 466 U.S. at 691-92). In order to establish prejudice in the context of a guilty plea, the second *Strickland* prong requires that the Defendant demonstrate that, but for counsel's deficient performance, he would not have entered the plea agreement. *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *see also Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir.2003).

To prevail, a petitioner must overcome the strong presumption that his counsel's performance fell within the wide range of reasonable professional assistance and that the original verdict was reliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Hodges*, 259 F.3d at 658; *Strickland*, 466 U.S. at 689-90 (finding that the reviewing court is to use a "highly deferential" standard of review to evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct"). A petitioner's burden in establishing a claim of ineffective assistance is heavy, and "[s]ubstandard

representation may be harmless where the evidence against the defendant is overwhelming."

*United States v. Shetterly*, 971 F.2d 67, 74 (7th Cir. 1992) (citations omitted).

## ANALYSIS

Defendant offers several possible grounds for supporting his motion for habeas relief: ineffective assistance of counsel at the plea hearing stage; general ineffective assistance of counsel at certain stages of the proceedings and as a result of coercive and threatening behavior; and a *Blakely* argument based on a post-conviction determination affecting sentencing. *See generally* 2255 Mot.

### Inadequacy of Counsel at Plea Agreement Negotiation

Defendant claims that his counsel was ineffective for failing to properly inform him of the consequences of the plea agreement into which he entered, resulting in a lack of the requisite knowledge and/or willingness. *Id.* at 3-4. The Government has argued that Defendant "does not claim ineffective assistance of counsel in regards to negotiating the waiver or involuntariness in regards to agreeing to the waiver itself." Resp. at 5-6. However, this oversimplifies Defendant fairly clear argument – in a section entitled "Failing to Advise about the Plea" – that certain misunderstandings resulted from counsel's words and actions: "Had the defendant been properly informed of the risk of the plea agreement vs. going to trial, he would not have pleaded guilty but have [sic] defended his innocence at a jury trial. The defendant had a Right to know, he had a right to be properly informed, and he had a right to not be lied to by counsel in order to get him to accept a plea he never wanted to accept." While the term "waiver" is never used, the inability to file any collateral attack on the ruling or sentence is certainly one of the complained of "risk[s] of the plea agreement" about which Defendant was allegedly misinformed. Coupled

with admittedly vague complaints of coercion, it can be reasonably inferred that Defendant is

claiming that his plea lacked the requisite knowledge, willingness, and/or advice of counsel.

Liberally construed,[1] Defendant's motion therefore survives the plea agreement waiver

based on the exceptions created by the Seventh Circuit.  *See Mason*, 211 F.3d at 1069.  The

rationale behind such a determination is clear:

> Justice dictates that a claim of ineffective assistance of counsel in connection
> with the negotiation of a [plea] agreement cannot be barred by the agreement
> itself-the very product of the alleged ineffectiveness....Similarly, where a
> waiver is not the product of the defendant's free will-for example, where it has
> been procured by government coercion or intimidation-the defendant cannot
> be said to have knowingly or voluntarily relinquished his rights. It is intuitive
> that in these circumstances the waiver is ineffective against a challenge based
> on its involuntariness. Mindful of the limited reach of this holding, we
> reiterate that waivers are enforceable as a general rule; the right to mount a
> collateral attack pursuant to § 2255 survives only with respect to those
> discrete claims which relate directly to the negotiation of the waiver.

*Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999).  Therefore, whether the considered

party is the government, as considered in *Jones*, or the party's own counsel, as is the case here,

the operative question is whether the defendant was under such pressure that entering the plea

agreement and waiver of rights was involuntary or unknowing.  This court must therefore

consider whether or not the plea agreement, and most importantly the waiver it contained, was

validly entered under the standard established by *Jason* and upheld by *Mason*.

Under *Strickland*, the burden is on Defendant to establish that his attorney ("counsel" or

"Cowan") was performing below an objective standard of reasonableness at the plea agreement

stage, and that prejudice resulted from those performance failures.  At that point in the

---

[1]As must be the case where petitioner is filing pro se.  *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996).

proceedings, however, counsel's objective standard of reasonableness turned on his ability to ensure that the plea agreement was validly entered into.[2]  In this instance, therefore, the validity of the waiver that the court was considering at trial, and the merits of the current § 2255 motion, both turn on factors that are discernible from the colloquy: Cowan's duty as counsel was to ensure that his client fully understood the terms of the plea agreement and approached it through his own volition, factors that can be drawn from the Defendant's responses; similarly, the trial court hoped to ensure the validity of the agreement by thoroughly questioning the Defendant on his understanding of the document, which goes to any potential prejudice that might have resulted from counsel errors.  *See Wright v. United States*, 2006 WL 2990435, at *4 (N.D. Ill. 2006) (applying *Strickland* to counsel's actions at the plea stage, and disregarding the reasonableness prong where any possible prejudice was cured by the colloquy).  Therefore, in considering the claim of ineffective assistance of counsel, this court will review the judge's colloquy at the plea hearing to determine if the *Strickland* factors are met.

At the outset it should be noted that several factors indicate that Defendant's acquiescence was knowing and voluntary, making a finding of ineffective assistance of counsel unlikely.  First, the plea agreement signed by Defendant clearly indicated the effects it would have, and also attested to the voluntariness of Defendant's signature.  Plea ¶ 21-22.  Second, the colloquy that took place pursuant to Rule 11 established that Defendant was aware of the effect of the agreement, Plea Hrg. at 43-44, and that he was not concerned or upset with the adequacy of counsel, *id.* at 45.  Third and finally, the trial court was satisfied that the plea agreement and

---

[2]This question of counsel's adequacy might also have involved the negotiation of the plea, but that issue has not been raised.

waiver were validly entered.  In other words, Judge Waters – who directly observed the interactions between Defendant and his attorney – believed the plea agreement was entered knowingly, voluntarily, and with adequate advice of counsel.  *Id.* at 45-46.  Therefore, in order to take Defendant's side with respect to the plea agreement claim in the current § 2255 motion, this Court would need to find that, despite Defendant's own attestations in a signed document, his responses in open court, and the findings of the trial judge, he in fact did not understand the nature of the waiver and was dissatisfied with the allegedly coercive and inattentive approach of counsel.  After considering the colloquy in its entirety, this Court determines that such a ruling would be unwarranted.

This case parallels *Mason* itself, in which the Seventh Circuit upheld a similar plea agreement waiver where the court's colloquy ensured that defendant had entered it knowingly and willingly:

> The trial judge had a colloquy with Mason in which he explained the sentence that he faced, and, furthermore, that he was also giving up his right to appeal the sentence or in any way challenge it. The court was satisfied that Mason fully understood the rights that he was waiving and that when he answered the judge's questions in the affirmative he fully understood what he was relinquishing and made his decision to waive those rights freely and voluntarily. He only became dissatisfied with his counsel's performance after the court imposed the sentence upon him.

*Mason v. United States*, 211 F.3d 1065, 1068 (2000).  Indeed, review of the trial judge's colloquy when taking a change of plea in light of an agreement has often been used as adequate grounds for ensuring that a plea agreement is fairly entered into.  *See Hobbs v. U.S.*, Not Reported in F.Supp.2d, 2005 WL 1910920, at *3 (N.D. Ind., Aug. 8, 2005) (summarizing opinions within the Seventh Circuit on this issue).  This is largely because a defendant's

statements before the trial judge are presumed to be truthful.  *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998).

The instant case is similar.  Judge Waters at the Plea Hearing spent a great deal of time and energy making sure that Defendant Taylor understood the repercussions of the plea agreement.  The fact that there are some moments at which Defendant seemed to have lacked knowledge, or responses from which lack of understanding might be inferred, does not necessarily rise to the *Strickland* standard.  Defendant bears a "heavy burden" in overcoming the "strong presumption" that his lawyer's assistance was effective and reasonable.  *United States v. Trevino*, 60 F.3d 333, 338, (7th Cir. 1995) (citing *Strickland*, 466 U.S. at 688).  Defendant must therefore point to specific acts or omissions by the lawyer that form the basis of his claim so that this Court might determined that the lawyer's conduct fell outside the range of professionally competent assistance.  *Id.*

Defendant maintains that he had asked counsel about "any and all pleas the government might have presented," but that he wasn't presented with the plea offer until the day of court. 2255 Mot. at 3.  As a result, an extension was granted in order to allow Defendant to consider the plea agreement, but Defendant alleges that during this time Counsel "failed to meet with the Defendant time after time."  *Id*.  Defendant then goes on to list additional problems with counsel at this stage of the proceedings, in that the attorney: suddenly "urged the defendant to just plead guilty" though previously "it had been the advice of counsel to go to trial to defend the charges"; falsely stated that "he (counsel) could change it later" and that "anything he did now could be changed at anytim[e]"; and ignored Defendant when he was "begging counsel to allow him to preview the evidence against him."  *Id.* at 3-4.

-11-

Indeed, some problems are apparent from the plea hearing transcript.  At several points,
Defendant exhibited noticeable physical discomfort and complained of chest pains, forcing the
court into recess so that he could sit down.  Plea Hrg. Tr. at 16-18.  Defendant seemed to lack an
understanding of some important issues, in that he: understated by half the mandatory minimum
sentence he would receive under the agreement, *id.* at 21; was unable to answer some key facts
about the crime in question, e.g., *id.* at 33 line 19, 34 line 2, 37 line 22, 38 line 1, 39 at 2; was
surprised to discover that house arrest would be unavailable to him pending the sentencing, *id.* at
48;  and throughout the hearing asked to have the court's questions restated or requested time to
consult with counsel.  Defendant's counsel also interfered with his client's colloquy responses,
prompting several reprimands from the bench.  *See, e.g, id.* at 32, lines 2-6; 38, lines 5-14; at 39
lines 16-22.  However, all of these issues of possible concern were effectively counteracted by
the thoroughness with which the court approached its colloquy, which covered all of the
important points of the plea agreement and its effect on Defendant.

With respect to counsel's alleged communication failures regarding the plea agreement,
Defendant expressly stated that he had the document in his hand at least the day prior to the
hearing, and that he had in fact reviewed it, on his own and with his attorney:

> THE COURT:    I understand from the court staff that you signed this plea
> agreement while I was off the bench and just after I left and I came
> in.  Is that correct?
>
> DEFENDANT:    Yes, sir.
>
> THE COURT:    How long have you had it to study?  At least a week after you –
>
> DEFENDANT:    Yes.
>
> THE COURT:    And you have read it and gone over it?

-12-

DEFENDANT:     Yes, sir.  I read it and went over it yesterday with my attorney. Plea Hrg. Tr. at 3-4; *see also id.* at 17-18 (answering that he had the document for over a week prior to the final plea hearing).  Defendant's complaints that Cowan didn't give his client the opportunity to understand the plea agreement are therefore contradicted by Defendant's responses at the plea hearing.

Any prejudice that might have arisen from counsel's alleged failure to inform Defendant about the plea agreement was ameliorated by the judge, who took the time to ensure that Defendant understood the document and its terms.  *See Wright*, 2006 WL 2990435, at *4.  The judge directly stated "we have to have a conversation...[s]o I can be sure that you understand what you are doing and what you are doing is voluntary, that you are doing it of your own free will."  Plea Hrg. Tr. at 4.  The Court, in satisfaction of its duties under Rule 11, described in full the trial that Defendant would be giving up by signing the plea agreement, Plea Hrg. Tr. at 7-8, and made clear that he would have no such opportunity once the agreement was entered into, *id.* at 9.  Despite this clear description, and a repeated invitation to address questions directly to the court, Defendant insisted that he wished to plead guilty:

> ([Defendant] confers with his attorney.)

> THE COURT:     I heard Mr. Cowan say there will be no trial.  You can't have a trial if you plead guilty.  Is there anything about that that you don't understand?

> DEFENDANT:     I understand.

> THE COURT:     Now, did you have questions.  You can ask me a question.  I will stop talking and let you ask me a question and do my best to answer it.

> (confers with his attorney.)

|               |                                                          |
|---------------|----------------------------------------------------------|
| DEFENDANT:    | I want to plead guilty.                                   |
| MR. COWAN:    | He understands he is giving up the right to a trial.  I was with him all day yesterday. |
| THE COURT:    | I appreciate that.  I have to make a record.             |
| MR. COWAN:    | I understand.  It's just I have to explain it to him.    |
| THE COURT:    | What is troubling you about that?  What part is it that you don't understand? |
| DEFENDANT:    | Just standing right here.                                |
| THE COURT:    | You are nervous and excited and anxious?                 |
| DEFENDANT:    | My hearts [sic] hurting.                                 |

Plea Hrg. Tr. at 11.  The court's colloquy also covered the specifics of the plea agreement,

moving subject-by-subject through the document to ensure that he understood its terms.

With respect to counsel's alleged coercive words and actions, the court's colloquy gave

Defendant every opportunity to express dissatisfaction with his attorney or describe any pressure

that was placed upon him:

|               |                                                          |
|---------------|----------------------------------------------------------|
| THE COURT:    | Now, has anybody mistreated you, threatened you, coerced you to make this plea agreement? |
| DEFENDANT:    | No.                                                      |
| THE COURT:    | Did your lawyer coerce you?  Do you know what I am talking about coercing, telling you you have got to sign this for me.  I don't care if you sign it.  That means not because you are guilty but because they want you to or they are making you do that.  That's what I mean by coerce.  Did you lawyer make you sign this? |
| DEFENDANT:    | No.                                                      |
| THE COURT:    | He didn't urge you to sign it?                           |

-14-

|              |                                                                                                                                                     |
|--------------|-----------------------------------------------------------------------------------------------------------------------------------------------------|
| DEFENDANT:   | No.                                                                                                                                                  |
| THE COURT:   | He didn't recommend that you sign it?                                                                                                                |
| DEFENDANT:   | No.                                                                                                                                                  |
| THE COURT:   | He didn't?                                                                                                                                           |
| DEFENDANT:   | No.                                                                                                                                                  |
| MR. COWAN:   | I let him make the decision.                                                                                                                         |
| THE COURT:   | I understand that.  But your function as a lawyer is to make recommendations.                                                                        |
| MR. COWAN:   | I gave him the recommendation that this is in his best interest to go along with the plea agreement.  But I left the decision to him.  It's not my – |
| THE COURT:   | I understand.  I am going to come down to that.  But your lawyer told you, Mr. Taylor, I think this is the best thing for you to do.  Is that right?  |
| DEFENDANT:   | Yes.                                                                                                                                                 |
| THE COURT:   | That's not coercing you.  That's asking you to make a decision. And did you make the decision not Mr. Cowan, to sign this?                           |
| DEFENDANT:   | Yes, I made the decision.                                                                                                                            |
| ...          |                                                                                                                                                     |
| THE COURT:   | You did it because you are willing?                                                                                                                  |
| DEFENDANT:   | Yes.                                                                                                                                                 |

Plea Hrg. Tr. at 19-20.  The court again addressed the issue of whether counsel's performance

had been satisfactory:

|              |                                              |
|--------------|----------------------------------------------|
| THE COURT:   | Okay.  Are you mad at Mr. Cowan for anything? |
| DEFENDANT:   | Un-huh.                                       |

> THE COURT:    Has he been competent?  Has he done his best for you do you think to represent you and give you good advice?

> DEFENDANT:    Yes.

Plea Hrg. Tr. at 45.

    With respect to Defendant's argument that counsel failed to make clear that no additional court processes would be available to him, once again this claim cuts against his words at trial. At every turn, Defendant either expressed an awareness that he would lose this right, or had it adequately explained to him by the court:

> THE COURT:    Now there is one other thing that is important that I am sure you understand.  In this plea agreement, you waive, you give up any right to appeal.  Do you understand that?

> DEFENDANT:    Yes.

> THE COURT:    That what happens in this court is final.  You give up the right to seek a change from a higher court.  Do you understand that?

> DEFENDANT:    Yes.

> THE COURT:    That even goes to, if I commit error in computing the sentence, assume that I make a mistake in giving you a sentence, you can't appeal that....Do you understand that?  You are looking puzzled and you are looking at Mr. Cowan.  What is it that you don't understand?  Ask me.

> DEFENDANT:    Okay.  Are you saying if you make a mistake.

> THE COURT:    If I screw up on the law...you are stuck with it.  You can't appeal.  Do you understand that?

> DEFENDANT:    Yes.

> THE COURT:    And you are willing to do that?  That's up to you.  If you voluntarily accept that and are willing to do that, then it's okay.  The plea agreement I am not going to interfere with it.  If you willingly and understandingly say, yeah, I will take the deal, this is

-16-

part of the deal between you and the government.  Do you understand that?

DEFENDANT:      Yes.

THE COURT:      And that's okay with you.  You are going to give up the right to appeal?

DEFENDANT:      Yes.

THE COURT:      Yes?  You are saying yes?

DEFENDANT:      Yes.

Plea Hrg. Tr. at 30-32.  In addition, the court expressly and extensively addressed the fact that

collateral attack would be precluded:

THE COURT:      Now, I asked you about the rights of appeal.  There is another right.  Under federal procedure, under 18 U.S. Code Section 2255, I guess it is, you have the right to claim after conviction and while you are in prison, that it all happened in violation of your constitutional rights.  This is the part that in the plea agreement that talks about waiver of a collateral attack.  Do you understand that you can't seek relief in the nature of habeas corpus because of violation of your constitutional rights in these proceedings.  Do you understand you are giving that up, too?

DEFENDANT:      Yes.

Plea Hrg. Tr. at 43-44.

Finally, this Court must consider Defendant's claim that counsel promised him that the

plea agreement and of its obligations were only temporary; counsel allegedly "assured him that it

was only until he could set things right.  That he needed him to do this now, and if he did not do

it, the judge and prosecutor would tear him apart."  Reply at 2.  In light of this claim, it is

troubling that the court did not directly ask the typical Rule 11 colloquy question "were any

other promises made?"  *See, e.g., Key v. United States*, 806 F.2d 133, 137 (7th Cir. 1986) (stating

-17-

that Rule 11 requires "that the defendant be asked whether or not 'promises apart from the plea agreement' were made").  However, the only relevant issues about which Defendant might have relied are the sentence and the possibility of appeal, both of which were thoroughly addressed in the colloquy in a manner that disproved Defendant's reliance on external promises.  *See* Plea Hrg. Tr. at 21-31, 43-44.  In addition, there is simply no objective evidence that Defendant can point to that such a promise was made.  "[M]ere allegations of promises made by counsel are insufficient to support a claim of ineffective assistance."  *United States v. Rodriguez-Luna*, 937 F.2d 1208, 1214 (7th Cir.1991);  *see also Towles v. U.S.*, 2006 WL 2348482, at *2 (N.D. Ind., Aug. 7, 2006) (finding the agreement that appellant "had an agreement outside the signed plea agreement that he would receive an 18 month sentence" was "frivolous" where it went against both the agreement and the colloquy).

Defendant has attempted to remove any doubt as to the prejudice prong by expressly stating that he was prejudiced by counsel's alleged errors or deliberate manipulations.  *See, e.g.,* Mot. at 4.  However, the *Strickland* standard holds that Petitioner must establish "a *reasonable* probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 669 (emphasis added).  Here, we have already thoroughly analyzed the colloquy, and in light of the presumption of truthfulness those words carry, there is no reasonable probability that Defendant would have acted differently with respect to his plea had counsel behaved differently.  The fact of the matter is that the trial court explained the plea agreement in its entirety, so although Defendant now claims differently, even more effective counsel could have provided no additional information to impact Defendant's decisionmaking that he did not receive from the court.  Merely making an assertion that

Defendant would not have pleaded guilty had he better understood the plea agreement is insufficient. Rather, he must show a "reasonable probability," under the *Strickland* rule, that he would not have done so. *See Key v. United States*, 806 F.2d 133, 138 et seq. (7th Cir. 1986); *see also McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.1991) (demanding objective evidence of this probability rather than self-serving assertions).

Throughout this process the court was extremely sensitive to the Defendant's ability to comprehend and be comfortable with the proceedings. *See, e.g.*, Plea Hrg. Tr. at 30 ("Do you understand that?...No. You don't. Let's go through it again. The reason I say that I can see by the look of absolute look of being perplexed on your face that you didn't follow what I was saying."). Therefore, even if Defendant's counsel had failed to meet the first prong of the *Strickland* standard, which this Court has not determined to be the case, the thoroughness with which the court approached its Rule 11 duties under the colloquy would have removed any potential prejudice that such failings might have caused. *See, e.g.*, *Wright*, 2006 WL 2990435, at *4. It is true that at sentencing, the court once again found itself having to explain to the Defendant an important term of the plea agreement about which he seemed confused.[3] However, this does not change the fact that the court made every effort at the plea hearing to ensure that it was properly understood, and every oral and written attestation of the Defendant indicated his

---

[3]"And in that plea agreement you gave away all your rights...if you hadn't signed that agreement, you could appeal. Don't look at your lawyer. Look at me and go talk to him later. I know what you are thinking, what he is telling me I have the right to appeal and he told me I didn't have the right to appeal. I can see it going through your mind right now. You can't appeal because you entered into the plea agreement. Remember? We went round and round on that and I asked if you understood that you were giving away all your rights." Final Disp. Tr. at 60, lines 10-23.

understanding of that plea.  To hold otherwise would undermine the finality that guilty pleas are

intended to provide.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

There is some indication that Defendant was inadequately prepared at the plea hearing.

However, to overcome the presumption of effective counsel, bolstered by Defendant's own

statements in the record, he would need to point to some evidence or indication of outright deceit

on the part of his attorney, in the absence of which he would not have plead guilty.  Instead,

Defendant has offered only speculation and after-the-fact criticism.  Such self-serving

attestations cannot outweigh the presumptive effect of a thorough Rule 11 colloquy which, even

in the face of alleged counselor error, effectively removed the risk of prejudice.

### *Inadequacy of Counsel at Sentencing, and Failure to file Notice of Appeal*

Defendant looks for further support for his ineffective assistance of counsel claim in the

lack of an allocution at sentencing, in that the right was allegedly denied by counsel's threat "not

now, not here, not at this point."  2255 Mot. at 4.  Defendant also maintains that his counsel was

ineffective for failing to file a notice of appeal despite Defendant's repeated requests that this be

done.  *Id.* at 5.  Defendant claims that he wanted to file but that his attorney promised he "would

file notice and would consult with the Defendant's regarding the appeal soon."  *Id.*  This was

apparently never done.  Finally, Defendant claims that counsel was generally ineffective for the

threatening and coercive tactics he used against his own client.  *Id.* at 5-6.

In agreeing to the plea agreement in question, Defendant entered into a valid waiver of

his right to collaterally attack or appeal these issues.  *See* Plea Agreement ¶¶ 19, 21; *see also*

*Mason*, 211 F.3d at 1069.  For this reason, further examination is unnecessary as these claims are

waived as grounds for collateral attack.  *See Jones*, 167 F.3d at 1145 (finding that where a valid

waiver exists, the right to mount a § 2255 collateral attack "survives only with respect to those discrete claims which relate directly to the negotiation of the waiver"); *see also Bridgeman v. United States*, 229 F.3d 589 (7th Cir. 2000).

<u>*Blakely Argument*</u>

Defendant claims that his sentence violated the rule of *Blakely v. Washington*, 542 U.S. 296 (2004), due to the fact that the court determined at sentencing that his actions in the crime warranted a two-point enhancement for his role in the criminal events.  2255 Mot. at 6. However, Defendant's ultimate sentence of 151 months was within the guidelines range and therefore, under the plea agreement, the right to collateral attack on this issue has been waived. In addition, the enhancement was based upon the facts provided by Defendant in the plea agreement and at colloquy, and therefore did not involve post-conviction judicial factfinding beyond the bounds of reasonable inference or judicial notice.  *See* Fed. R. Evid. 201.  In any event, *Blakely* was not decided at the time of Defendant's sentencing, does not apply retroactively to collateral review, and therefore cannot serve as the grounds for second-guessing that sentence.  *McReynolds v. U.S.*, 397 F.3d 479 (7th Cir. 2005).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for habeas relief pursuant to 28 U.S.C. §2255 is DENIED and this case is DISMISSED with prejudice.

Enter:


/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **January 11, 2007**

-21-